IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIKRAM VARMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. |
| v. ) | |
| ) | Plaintiff Demands a Trial by |
| TCC WIRELESS LLC., ) | Jury |
| a foreign limited liability ) | |
| corporation, and FRANK BAREE,) | |
| an Individual ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Vikram Varma, by and through his attorneys, Favaro & Gorman, Ltd. and for his Complaint against the defendants, TCC Wireless LLC, a foreign limited liability corporation and Frank Baree, an individual, states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for damages caused by defendants, TCC Wireless LLC's ("TCC") and Frank Baree ("Baree") for wrongful discharge of plaintiff, Vikram Varma, ("Varma") from employment, in violation of §102 of the Family and Medical Leave Act of 1993 (29 U.S.C. §2615) ("FMLA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* and for claims under the common law of the State of Illinois.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court over this controversy is invoked pursuant to the 29 U.S.C. §2617; 28; U.S.C. §1311 and 1342(a)(4) and pursuant to pendent jurisdiction.

3. The unlawful employment practices described herein were committed within the State of Illinois. TCC conducted business and employed Varma in the State of Illinois. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

4. On October 29, 2019, Varma filed his charge of discrimination with the Equal Employment Opportunity Commission. *See* charge of discrimination attached hereto as Exhibit "A" and made a part hereof. A Notice of Right to Sue will be issued at the earliest opportunity.

## PARTIES

5. Varma is a citizen of the United States of Indian origin and of Hindu faith, at all times relevant hereto, a resident of Cook County, Illinois. Varma was employed as a Retail Auditor for TCC at the time of the acts alleged hereinafter. Varma was an "employee" of TCC within the meaning of 29 U.S.C. §2611(2)(A) at the time he requested TCC for a leave of absence from employment.

6. TCC is a provider of wireless phone services and related businesses with various locations in Illinois and elsewhere and operated as a franchise of TMobile. TCC was an "employer" of Varma within the meaning of 29 U.S.C. §2611(4)(A) at all times relevant to this action.

7. Frank Baree is an individual who resides and resided at all times relevant in Illinois and was at all times relevant employed by TCC as a Director of Operations. He also had control over whether Varma was able to take a leave of absence pursuant to the Family Medical Leave Act and over whether Varma was subjected to retaliation and harassment as a result of asserting his Family Medical Leave Act rights.

8. From May, 2016 to early Fall, 2017, Varma had been employed by TCC as a Retail Store Manager and a Retail Training Manager; however, in the Fall of 2017, Varma left TCC for other opportunities.

9. In October, 2017, Varma was contacted by TCC to schedule a meeting with the CEO Jay Malik ("Malik").

10. Varma interviewed with Malik and Malik told him he would be a great fit for a soon-to-be available role of Director of Operations with a salary between $75,000.00 and $85,000.00.

11. In reliance on Malik's representations, Varma began work as a Retail Auditor earning $48,500.00 on November 1, 2017 with the understanding that his job title and salary would be adjusted by February, 2018.

12. The duties of a Retail Auditor customarily included inventory and brand management.

13. Instead of training that would relate to the intended role, Varma was assigned to a store in Addison, Illinois and spent one and a half months doing nothing but cleaning, rewiring demos and organizing the backroom (all of which bore no relation to the job of Retail Auditor); he was not even allowed to sell to customers.

14. These circumstances created significant stress and unease with co-workers who wanted to know what he was doing if he could not even help with customers.

15. Although Varma had been led to understand that he would report to Malik, it became apparent that he was to report to Baree, who was apparently Director of Operations, the role that had been promised to Varma.

16. Throughout the remainder of Varma's employment, Baree would harass, demean and mistreat Varma all as described hereafter.

17. At the end of the year 2017, there were two company events that all of Varma's teammates were invited to, one for Christmas, and one for New Years, but Varma was not included in these invitations.

18. In January, 2018, Baree began to contact Varma on a regular basis to determine what work he was doing, this despite the fact that Varma was not formally reporting to him.

19. When Varma asked Baree about having a conversation with Malik, Baree told Varma that Malik was busy, that Varma should "keep his nose down" because the Company did not like people who make waves and cause drama.

20. In February, 2018, Baree contacted Varma requesting that he come to the corporate office in Carol Stream, Illinois.

21. When Varma arrived, Baree told him that he (Baree) was the Director of Operations and that Varma would be remaining as a Retail Auditor with no adjustment to his pay.

22. Shortly thereafter, Varma told Baree that there would be about ten days that he would need to request off for religious holy days and Baree told Varma that the company did not recognize Hindu holidays, so he would not approve them and that Varma was not allowed to go to human resources with this because "that would make noise".

23. On information and belief, the Pakistani employees were allowed to leave early on Friday and to have religious holy days off in light of their Muslim religious beliefs.

24. Throughout the remainder of his employment, anytime Varma needed to request days off, Baree would want to know invasive details of the reason and plans before providing approval (which was only allowed intermittently); on information and belief, Varma was the only employee subjected to such scrutiny.

25. By way of example, Varma requested to off to be with his father due to a surgery and when he returned, other employees were inquiring about the surgery.

26. During the early months of 2018, Varma endeavored to perform duties as best possible, despite the change in his intended role and the difficulties described herein.

27. In March, 2018, Baree commented "Man, your car smells" referring to the smell of curry.

28. In Spring, 2018, Baree also told Varma that he needed to put gel in his hair because he looks like a "Desi" and that he was an embarrassment to the company; he finished his comments by saying "you remember that "Desi Chut" Dilpreet? He did not want to do his job the way we told him, so we fired that Chut. Don't find yourself in the same boat you little Chut". Varma was sent home to change his clothes and style his accordingly.

29. In April, 2018, Varma was told by Baree that he was being written up for speaking Hindi at one of the retail stores; the conversation had taken place in the back of the store and was a personal conversation with Varma's mother.

30. On information and belief, many of the Pakistani employees, including Baree, would frequently speak Urdu and no one was written up for use of that language.

31. In June, 2018, Varma went on a trip to Miami and was accompanied by, among others, Baree.

32. While on this trip, and at a nightclub, Baree grabbed Varma's genitals.

33. Varma was afraid to report this because all previous efforts to report infractions to HR had been left unresponded and Baree repeatedly told him not to go to HR, that if he shared concerns with anyone other than him, it would be trouble for Varma and that he and TCC "do not like people who make noise".

5

34. In July, 2018, Varma was sent to visit a location in Gurnee, Illinois to conduct a formal audit and ensure brand compliance but was directed by the District Manager to leave the location because he was not allowed to be there on Fridays.

35. Varma explained that if she had any issues, we should speak with HR.

36. Shortly thereafter Varma received a call from Baree demanding that Varma pack up and leave the store; to which, Varma explained that he would be bringing the issue to HR; and to which Baree advised him not to do so because TCC did not like people who made noise and complained about their job.

37. Varma contacted HR and was told by the HR Manager that she would speak with the individuals involved; however, two weeks later she was no longer employed at TCC, his complaint was ignored and the harassment and discrimination against Varma by Baree escalated.

38. From this point forward, Baree assigned side tasks and personal errands to Varma on a nearly daily basis (all of which bore no relation to the job of Retail Auditor).

39. In August, 2018, TCC had acquired about 64 new stores and scheduled an event at the Hyatt in Schaumburg to highlight this acquisition.

40. Varma was directed to photograph the event, without compensation or recognition.

41. In the course of the event, Varma was required to photograph subordinates; Baree and other managers were making demeaning remarks regarding Varma's services at this event.

42. At 9:00 -9:30 p.m., Varma attempted to leave and go home, but was told by Baree that he should continue taking pictures and that if he left he would be written up for insubordination. In addition, Baree also sent Varma to Target to buy plastic baggies for Baree.

43. In response to these threats, and in fear of loss of his job, Varma continued to take pictures.

6

44. Upon information and belief, other non-Indian and non-Hindu teammates also performed job duties at the event but were compensated with $600.00 in gift cards and had verbal recognition of their help that night.

45. In October, 2018, Baree directed Varma to drive to each of the 64 new locations on three separate times to (1) deliver "Now Hiring" signs and to install same, (2) to deliver regulated waste baskets, and (3) to clean the windows of each location and to clean the stores out from front to back (all of which bore no relation to the job of Retail Auditor).

46. In the course of performing these duties, Varma was required to drive over 5000 miles on his personal automobile. Baree told him that he could not expense any of the vehicle use because it was part of his job; Varma complained that this was not fair and that he was not performing his job duties but miscellaneous menial tasks at Baree's discretion.

47. Baree gave everyone Thanksgiving off except for Varma, who was required to work.

48. In Fall of 2018, Baree began to make offensive and derogatory comments toward Varma about his national origin and/or religion.

49. Such comments continued until the termination of Varma's employment.

50. These comments and the mistreatment of Varma on the basis of his national origin and/or religion were ongoing.

51. On an occasion in December, 2018, Baree said to Varma "Man I looked at a house this weekend, it was owned by some of these "Curry Desis" and the house smelled disgusting. It is all those spices that you people use, does your house smell like this?"

52. In Winter, 2018, Baree also made derogatory comments regarding Varma's attire, including a blue sapphire and gold chain that had cultural significance for Varma, specifically

calling Varma a "Chumkeelah", Baree said that Varma looked like a Desi girl going to her wedding and he was not to wear the jewelry anymore.

53. In January, 2019, Varma requested FMLA leave through a third-party provider who approved the leave.

54. Despite that approval, Baree insisted that Varma provide him with details and insisted that he (Baree) was entitled to learn all such information.

55. In or about January, 2019, Varma was relocated to a location in Hoffman Estates, Illinois, again to clean the store, rewire displays and perform menial tasks for Baree, including delivering parts and inventory from one store to another.

56. In the weeks prior to the requested leave, Baree continuously berated and harassed Varma because of the requested FMLA leave.

57. While on leave, Baree continued to harass Varma by texting and calling him repeatedly and after hours.

58. In the course of these communications, Baree repeatedly told Varma "it doesn't matter what you're on (meaning FMLA)" and "you are not one of us, quit acting like a Chut and know your place. I thought I made that clear when you started. You don't have the right to make your own schedule without my approval and dictate where and when you want to go".

59. Within a few days of the FMLA leave beginning, Baree contacted the third-party provider and upon information and belief gained access to copies of Varma's private medical records.

60. During this same time, Baree sent emails copying the Director of Human Resources stating that Varma needed to come to the office, so he could "talk to me", despite Varma's FMLA Leave.

61. All of the foregoing caused anxiety and stress which negatively affected Varma's healing process.

62. Varma was on FMLA leave from January 16, 2019 to February 8, 2019.

63. Upon his return from FMLA leave, Baree directed that Varma travel to over 45 stores picking up and carrying heavy TVs back to the corporate office (all of which bore no relation to the job of Retail Auditor).

64. This project was plainly retaliatory for Varma's exercise of his FMLA rights.

65. As Varma was not yet healed, this project caused further injury.

66. As part of this project, Baree directed that Varma clean out a company van which was filthy and contained mold (which bore no relation to the job of Retail Auditor).

67. At or about this point and going forward, other employees began to ask Varma if he was part of the maintenance team rather than as a Retail Auditor.

68. At this same time, Baree directed that Varma clean and fix up retail stores, clean windows, reorganize filthy back rooms, (some with rodent infestation and some that smelled like sewers), change batteries, remerchandise stores, and set up demo devices (all of which bore no relation to the job of Retail Auditor); his work was referred to by Baree as "monkey work" and would require travel to three or four stores a day.

69. In April, 2019, Varma again requested FMLA leave, first by telling Baree he would be requesting leave to which Baree responded "if you go on medical leave, you won't have a job when you get back."

70. Despite Baree's warning, Varma needed the leave and exercised his FMLA rights. Varma was on FMLA leave from April 23, 2019 to May 28, 2019.

71. When Varma returned to work on May 28, 2019, following his FMLA leave, he arrived promptly at 8:45 and went to see Baree's father to ask him why his IPass was not working anymore; Baree's father responded that "It's because you're getting fired today. My son told me that you had been taking too much time off work and he doesn't like people like that".

72. When Varma saw Baree upon his arrival, he went to his office and asked for his schedule and was told "you don't have one and go see Kate ".

73. When he met with Kate, she handed him termination paperwork, and his employment ended.

## COUNT I

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

## INTERFERENCE

74. Varma restates and realleges paragraphs 1 through 73 as though fully stated herein.

75. TCC and Baree interfered with his rights to FMLA leave and terminated his position with TCC.

76. The foregoing actions taken against Varma were in violation of 29 U.S.C.A. §2615(a).

Wherefore, Plaintiff, Vikram Varma, respectfully requests this Court enter judgment against Defendants for the following:

(a.) Enter a judgment that defendant's termination of Varma's position following his request for leave was done in violation of 29 U.S.C. §2615 of the Family and Medical Leave Act of 1993;

(b.) Enter a judgment pursuant to 29 U.S.C. §2617 (a)(1)(A)(i)(I) against Defendants and in favor of Varma for wages, salary, employment benefits or other compensation denied or lost to Varma by reason of the Defendants' unlawful actions;

(c) Enter a judgment pursuant to 29 U.S.C.§2617(a)(1)(A)(ii) for interest on the above amount calculated at the prevailing rate;

(d.) Enter a judgment pursuant to 29 U.S.C.§2617(a)(1)(A)(iii) for liquidated damages equal to the sum of the amount described in clause (b) above and the interest on the amount described in clause c above.

(e.) Enter a judgment pursuant to 29 U.S.C. §2617 (a)(3) against Defendants and in favor of Varma for reasonable attorneys' fees and costs and expert witness fees incurred by Varma in connection with the instant action;

(f.) Such other equitable relief as may be appropriate including employment, reinstatement and promotion; and

(g.) Award Varma such further and other relief as the Court may deem just and proper.

## COUNT II

## VIOLATION FAMILY AND MEDICAL LEAVE ACT

## RETALIATION

77. Varma restates and realleges paragraphs 1 through 73 as though fully stated herein.

78. TCC retaliated against Varma by subjecting him to criticism, intolerable work conditions and terminating his employment.

79. These actions occurred within a short period of time following Varma's assertion of rights and so create the reasonable inference that were retaliatory based on Varma's requests for time-off pursuant to the Family and Medical Leave Act.

80. The foregoing actions taken against Varma were in violation of 29 U.S.C.A. §2615(a).

Wherefore, Plaintiff, Vikram Varma, respectfully requests this Court enter judgment against Defendants:

a. Enter a judgment that Defendants' termination of Varma's position following his request for leave was done in violation of 29 U.S.C. §2615 of the Family and Medical Leave Act of 1993;

11

b. Enter a judgment pursuant to 29 U.S.C. §2617 (a)(1)(A)(i)(I) against the Defendants and in favor of Varma for wages, salary, employment benefits or other compensation denied or lost to Varma by reason of the Defendants' unlawful actions;

c. Enter a judgment pursuant to 29 U.S.C.§2617(a)(1)(A)(ii) for interest on the above amount calculated at the prevailing rate;

d. Enter a judgment pursuant to 29 U.S.C.§2617(a)(1)(A)(iii) for liquidated damages equal to the sum of the amount described in clause (b) above and the interest on the amount described in clause c above.

e. Enter a judgment pursuant to 29 U.S.C. §2617 (a)(3) against Defendants and in favor of Varma for reasonable attorneys' fees and costs and expert witness fees incurred by Varma in connection with the instant action;

f. Such other equitable relief as may be appropriate including employment, reinstatement and promotion; and

g. Award Varma such further and other relief as the Court may deem just and proper.

## COUNT III

### NATIONAL ORIGIN, HARASSMENT AND DISCRIMINATION

### 42 U.S.C. §2000(e), et. seq. ("Title VII")

81. Varma restates and realleges paragraphs 1 through 73 as though fully stated herein.

82. TCC and Baree subjected Varma to harassment and discrimination because of his national origin, Indian, as described above.

83. TCC and Baree intentionally discriminated against Varma because of his national origin, Indian, when it terminated his employment agreement with TCC.

84. Such discriminatory conduct impairs Varma's rights of enjoyment of all benefits and privileges of his employment with TCC in violation of Title VII.

85. As a result of TCC and Baree's intentional, discriminatory treatment, Varma has sustained loss of wages, loss of enjoyment of life, physical and psychological pain and suffering, injury to reputation and emotional distress in an amount to be proved at trial.

Wherefore, Plaintiff, Vikram Varma, respectfully requests this Court enter judgment against Defendants for the following:

a. Enter a declaratory judgment that the acts and practices of Defendants complained of herein are in violation of the laws of the United States;

b. Order Defendants to make Varma whole by paying him lost back pay and employee benefits;

c. Order Defendants to compensate Varma for the pain, suffering and humiliation Varma has suffered as a result of Defendants' illegal actions in an amount to be determined at trial.

d. Award Varma other compensatory and punitive damages in an amount to be determined at trial.

e. Award Varma costs of this suit, reasonable attorneys' fees, expert witness fees, if any, and such other relief available under Title VII, 42 U.S.C. §1981 and the common law of the State of Illinois; and

f. Grant any other relief that this Court may deem just and proper.

## COUNT IV

## RELIGION, HARASSMENT AND DISCRIMINATION

### 42 U.S.C. §2000(e), et. seq. ("Title VII")

86. Varma restates and realleges paragraphs 1 through 73 as though fully stated herein.

87. TCC and Baree subjected Varma to harassment because of his religion, Hindu as described above.

88. TCC and Baree intentionally discriminated against Varma because of his religion, Hindu when it terminated Varma's employment with TCC.

89. Such discriminatory conduct impairs Varma's rights of enjoyment of all benefits and privileges of his employment with TCC in violation of Title VII.

90. As a result of TCC and Baree's intentional, discriminatory treatment, Varma has sustained loss of wages, loss of enjoyment of life, physical and psychological pain and suffering, injury to reputation and emotional distress in an amount to be proved at trial.

Wherefore, Plaintiff, Vikram Varma, respectfully requests this Court enter judgment against Defendant for the following:

a. Enter a declaratory judgment that the acts and practices of Defendants complained of herein are in violation of the laws of the United States;

b. Order Defendants to make Varma whole by paying him lost back pay and employee benefits;

c. Order Defendants to compensate Varma for the pain, suffering and humiliation Varma has suffered as a result of Defendants' illegal actions in an amount to be determined at trial.

d. Award Varma other compensatory and punitive damages in an amount to be determined at trial.

e. Award Varma costs of this suit, reasonable attorneys' fees, expert witness fees, if any, and such other relief available under Title VII, 42 U.S.C. §1981 and the common law of the State of Illinois; and

f. Grant any other relief that this Court may deem just and proper.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91. Varma restates and realleges paragraphs 1 through 73 above as though fully set forth herein.

92. That the conduct of TCC and Baree as alleged above was outrageous.

93. As a direct and proximate result of such conduct Varma suffered and continues to suffer severe emotional distress and injuries including but not limited to pain, suffering, anguish, embarrassment and humiliation.

94. Defendants knew or should have known of the consequences of their conduct.

95. That Varma has suffered and will continue to suffer damages in an amount to be determined by a jury at trial.

WHEREFORE, Plaintiff, Vikram Varma, prays this Court enter judgment in his favor and against the Defendants as follows:

a. Compensatory damages in an amount to be determined at trial; and

b. Punitive damages in an amount to be determined at trial; and

c. That Varma be awarded such other and further relief as the Court may deem just and proper.

## COUNT VI
## INVASION OF PRIVACY

96. Varma restates and realleges paragraphs 1 through 73 above as though fully set forth herein.

97. At all times relevant hereto, Varma had a reasonable expectation of privacy in the medical circumstances for which he required FMLA Leave.

98. As alleged above, Baree intruded upon the solitude and seclusion of Varma by obtaining his confidential medical information without his knowledge and permission.

99. Such conduct is highly offensive to a reasonable person.

100. Such conduct has caused Varma to suffer emotional distress, embarrassment and humiliation,

Wherefore, Plaintiff, Vikram Varma, respectfully requests this Court enter judgment against Defendants for the following:

a.  Enter a declaratory judgment that the acts and practices of Defendants complained of herein are in violation of the laws of the United States;

b.  Order Defendants to make Varma whole by paying him lost back pay and employee benefits;

c.  Order Defendants to compensate Varma for the pain, suffering and humiliation Varma has suffered as a result of Defendants' illegal actions in an amount to be determined at trial.

d.  Award Varma other compensatory and punitive damages in an amount to be determined at trial.

e.  Award Varma costs of this suit, reasonable attorneys' fees, expert witness fees, if any, and such other relief available under Title VII, 42 U.S.C. §1981 and the common law of the State of Illinois; and

f.  Grant any other relief that this Court may deem just and proper.

## JURY DEMAND

Varma demands a trial by jury on all counts properly submissible to a jury.

Respectfully Submitted,

Favaro & Gorman, Ltd.

By: /s *Patrick J. Gorman*
One of the plaintiff's attorneys

Dennis R. Favaro
dfavaro@favarogorman.com
Patrick J. Gorman
pgorman@favarogorman.com
Favaro & Gorman, Ltd.
835 Sterling Avenue
Suite 100
Palatine, Illinois 60067
(847) 934-0060

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

**AGENCY:** ☐ FEPA ☑ EEOC

**CHARGE NUMBER:**

__Illinois Dept. of Human Rights__ and EEOC
*State or local Agency, if any*

**NAME** (indicate Mr., Ms. or Mrs.): Mr. Vikram Varma
**HOME TELEPHONE** (include area code): (847) 660-4521

**STREET ADDRESS / CITY, STATE AND ZIP CODE:** 700 East Algonquin Road, Unit 2405, Schaumburg, Illinois 60173

**DATE OF BIRTH:**

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below.)

**Name:** TCC Wireless LLC.
**NUMBERS OF EMPLOYEES, MEMBERS:** 15+
**TELEPHONE NUMBER** (Include Area Code): (630) 480-2224

**STREET ADDRESS / CITY, STATE AND ZIP CODE:** 175 S. Bloomingdale Road, Bloomingdale, Illinois 60108
**COUNTY:** DuPage

**NAME:**
**TELEPHONE NUMBER** (Include area code):
**STREET ADDRESS / CITY, STATE, AND ZIP CODE:**
**COUNTY:**

**CAUSE OF DISCRIMINATION BASED ON** (check appropriate box(es)):
☐ RACE ☐ COLOR ☐ SEX ☑ RELIGION ☑ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (SPECIFY)

**DATE DISCRIMINATION TOOK PLACE**
**EARLIEST (ADEA/EPA) LATEST (ALL)**
November 2017 - May 28, 2019
☑ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional space is needed, attached extra sheet(s)):

**\*\*See Attached\*\***

☑ I also want this charge filed with the Illinois Department of Human Rights. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedure.

X /s/ Vikram Varma    X 10-10-19

I declare under penalty of perjury that the foregoing is true and correct.

**NOTARY** (Necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that is true to the best of my knowledge, information and belief.

X /s/ Vikram Varma    X 10-10-19
**SIGNATURE OF COMPLAINANT   DATE**

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (day, month, and year)

Notary Signature & Stamp

Exhibit A

**Vikram Varma v. TCC Wireless LLC.**

1. I was employed by Respondent from May 2016 until early Fall 2017. In the Fall of 2017, I left Respondent to pursue other opportunities. I became re-employed with Respondent on November 1, 2017. My position at the time of my hire in November 2017 was that of a Retail Auditor. I took the position of Retail Auditor with the understanding that my job title and salary would be adjusted in February 2018.

2. My national origin is Indian. My religion is Hindu.

3. At all times relevant hereto, I met the reasonable expectations of Respondent.

4. I was hired by the CEO Jay Malik (national origin: Pakistani, religion: Muslim). I reported to the Director of Operations, Frank Baree ("Baree"), (national origin: Pakistani, religion: Muslim).

4. I was led to believe that I would report to Malik, but it became apparent to me that I was to report to Baree, who was apparently The Director of Operations, the role that had been promised to me by Malik at the time of my hire.

5. Throughout my employment, I was subjected to unwelcomed offensive and derogatory comments by Baree on the basis of my national origin and/or religion.

6. Shortly after my hire, I told Baree that I would need ten days off for religious holidays. In response, Baree told me that Respondent did not recognize Hindu holidays. My requests for time off for religious holidays was not approved. Further, I was told by Baree that I was not allowed to go to human resources with my request because "that would make noise".

7. Upon information and belief, Pakistani employees were allowed to leave early on Fridays and to have religious days off in light of their Muslim religious beliefs.

8. Upon information and belief, many of the Pakistani employees, including Baree, would frequently speak Urdu and no one was written up for use of the Urdu language.

14. In March 2018, Baree commented to me "Man, your car smells" referring to the smell of curry.

**Vikram Varma v. TCC Wireless LLC.**

9. In the Spring of 2018, Baree told me that I needed to put gel in my hair because I looked like a "Desi" and that I was an embarrassment to the company. He further stated that "you remember that "Desi Chut" Dilpreet? He did not want to do his job the way we told him, so we fired that Chut. Don't find yourself in the same boat you little Chut". I was sent home to change my clothes and style.

10. In April 2018, I was told by Baree that I was being written up for speaking Hindi at one of Respondent's retail stores. The conversation for which I was being written up about took place in the back of the store and was a personal conversation with my mother.

11. In August 2018, Respondent acquired sixty-four stores and scheduled an event at the Schaumburg Hyatt to highlight this acquisition. I was required to photograph subordinates. Baree and other managers made demeaning remarks to me during this event. I attempted to leave to go home between 9:00 – 9:30 p.m. I was told by Baree that I should continue taking pictures and, if I left, I would be written-up for insubordination. I also was sent by Baree to Target to buy plastic bags for Baree.

12. Other non-Indian and non-Hindu teammates, who also performed job duties at the event, were compensated with $600 in gift cards and had verbal recognition of their help. I was not given any gift cards nor was given any verbal recognition for my participation.

12. In the early Winter of 2018, Baree also made derogatory comments regarding my attire, including a blue sapphire that had cultural significance for me, specifically saying "you look like a Desi girl with your jewelry going to her wedding: don't wear any of it at work anymore".

13. In December 2018, Baree said to me "Man I looked at a house this weekend, it was owned by some of these "Curry Desis" and the house smelled disgusting. It is all those spices that you people use, does your house smell like this?"

15. I repeatedly complained to human resources about Baree's comments and treatment. My complaints went unanswered, and I was often told by Baree that Respondent did not like employees who "made noise" and complained.

16. In January 2019, I took a leave pursuant to the Family and Medical Leave Act. While on leave, Baree repeatedly texted me and called me after hours. On one occasion, Baree said to me, "it doesn't matter what you're on (meaning FMLA)" and "you are not one of us, quit acting like a Chut and know your place. I thought I made that clear when you started. You don't have the right to make your own schedule without my approval and dictate where and when you want to go".

2

**Vikram Varma v. TCC Wireless LLC.**

17. I took a second leave pursuant to the Family and Medical Leave on from April 23, 2019 to May 28, 2019. Upon my return on May 28, 2019, I was terminated from my employment.

18. I believe that I have been discriminated and terminated in because of my national origin and religion in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Illinois Human Rights Act.